**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GREGORY F. WASHINGTON,

        Petitioner,

v.                                  Case No. 3:13-cv-1180-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.
_____

## ORDER

## I. Status

Petitioner Gregory F. Washington, an inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1; Petition), to which he attached exhibits (Pet. Ex.).[1]  He subsequently filed an Amended Petition (Doc. 14; Amended Petition) and a Memorandum of Law in Support of Petition for Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254 (Doc. 18; Pet. Mem.).   In the Amended Petition, Washington challenges a 2011 state court (Nassau County, Florida) judgment of conviction for trafficking in oxycodone for which he was sentenced to twenty-five years imprisonment.   Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Doc. 33; Response).   Pursuant to the Court's order (Doc. 35), Respondents filed a supplemental

---

[1] When citing to Petitioner's Exhibits, the Court will use the stamped page number at the bottom corner of the page or the page number of the transcript.  When citing to page numbers of Washington's pleadings, the Court will use the page number assigned by the Court's docketing system instead of the page number used by Washington.

response (Doc. 36; Supp. Response) with exhibits (Resp. Ex.).  Washington filed a reply (Doc. 40; Reply).  This case is ripe for review.

## II. Procedural History

In 2010, the State of Florida (State) charged Washington by information with trafficking in oxycodone and conspiracy to traffic in controlled substances.  Pet. Ex. A-1 at 15.  At trial, the State proceeded only on the count of trafficking in oxycodone.  Pet. Ex. A-6 at 5.  A jury convicted Washington, see id. at 351, and the trial court sentenced him to a mandatory minimum term of twenty-five years imprisonment.  Pet. Ex. A-8 at 17.

Washington appealed his conviction and sentence to the First District Court of Appeal (First DCA).  Pet. Ex. C-1.  The First DCA held oral argument, see Resp. Ex. R, before affirming Washington's conviction and sentence per curiam, without written opinion.  Pet. Ex. C-2.  Washington moved for rehearing, see Pet. Ex. C-3, and for clarification, certification and written opinion.  See Pet. Ex. C-4.  After denying Washington's motions see Pet. Ex. C-5, the First DCA issued the mandate in Washington's case on August 7, 2012.  Pet. Ex. C-6.

## III. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing.  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016).  "It follows that if

the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. Because Washington has not established the need for an evidentiary hearing, the Court will not conduct one.

## IV. Exhaustion and Procedural Default

### A. Exhaustion

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). As the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

To fairly present a claim, the petitioner must present it to the state courts as a federal, constitutional claim rather than as a matter of state law.  See Duncan, 513 U.S. at 365-66; Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 456-59 (11th Cir. 2015).  To do so, a petitioner can include "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Baldwin, 541 U.S. at 32.  But raising a state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement."  Duncan, 513 U.S. at 366.  Likewise, merely citing to the federal constitution is insufficient to exhaust a claim in state court.  Anderson v. Harless, 459 U.S. 4, 7 (1982); see also McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) ("'The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'") (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).  As explained by the Eleventh Circuit:

> To "fairly present" a claim, the petitioner is not required to cite "book and verse on the federal constitution."  Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971) (quotation omitted).  Nevertheless, a petitioner does not "fairly present" a claim to the state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin, 541 U.S. at 32, 124 S. Ct. 1347.  In other words, "to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues."  Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007) (quoting Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir.1998)) (concluding that the petitioner's claims were raised where the petitioner had provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1352 (11th Cir. 2012). "The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." Preston, 785 F.3d at 457 (11th Cir. 2015); see also French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1270-71 (11th Cir. 2015), cert. denied, 136 S. Ct. 815 (2016).

## B. Procedural Default and Exceptions

"[W]hen 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile," a procedural default occurs. Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quotation omitted); see also Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."). In such circumstances, federal habeas review of the claim is typically precluded. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012); Smith, 256 F.3d at 1138. Nevertheless, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010).

To show cause for a procedural default, "the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." Id. at 1157 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Id. (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

In the absence of a showing of cause and prejudice, a petitioner may obtain consideration on the merits of a procedurally defaulted claim if he can establish that a failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 724. This exception has been described as "exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## V. **Analysis**

### A. **Ground One**

As ground one, Washington asserts that the trial court erred in denying his motion to suppress.[2] He claims that (a) there was no probable cause for the initial stop; (b) the search of Washington's person violated the Fourth Amendment and was not supported by an exception to the warrant requirement; (c) any nonverbal consent (if given) was based on acquiescence to a show of authority; and (d) the search of Washington's person violated the "plain feel" doctrine. Am. Petition at 5; Pet. Mem. at 23-44; Reply at 2-3.

---

[2] Washington was the front-seat passenger in a vehicle traveling on I-95 in Nassau County, Florida, when law enforcement conducted a traffic stop of the vehicle. See Pet. Ex. A-1 at 1-2; 75-105.

Washington raised these issues in the state trial and appellate courts. In the trial court, he filed a motion to suppress evidence based upon illegal stop/seizure of automobile and illegal search and seizure of the defendant (Pet. Ex. A-1 at 56-62) as well as a memorandum of law in support thereof (Pet. Ex. A-1 at 64-71). The state trial court conducted an evidentiary hearing on Washington's motion to suppress. Pet. Ex. A-5 at 1-61. At the evidentiary hearing, the State presented the testimony of Dallas Palecek, a deputy with the Nassau County Sheriff's Office. Id. The trial court admitted two exhibits: (1) a CD-ROM containing a video of the traffic stop filmed from Deputy Palecek's dashboard camera, see id. at 15; Pet. Ex. A-1 at 74; and (2) a transcript of the video of the same traffic stop. See Pet. Ex. A-1 at 75-105; Pet. Ex. A-5 at 37-38. Through counsel, Washington cross-examined Deputy Palecek and relied on the video, but Washington did not testify or offer any witnesses or other evidence on his behalf. Pet. Ex. A-5 at 45. As such, the evidence consisted of Deputy Palecek's testimony, the video of the traffic stop, and the transcript of the video. Both the state (id. at 45-51) and Washington (id. at 52-60) argued their positions, and the trial court announced that it would take the matter under advisement. Id. at 60. Following the hearing, Washington filed a supplemental memorandum of law in support of his motion to suppress, see Pet. Ex. A-1 at 106-14, and faxed a supplemental closing argument. See id. at 115-18. On January 5, 2011, the trial court denied the motion to suppress in a one-page order as follows:

> This matter came to be heard on defendant's Motion to Suppress, and the Court having received the testimony and evidence, heard argument of counsel, reviewed defendant's Memorandum of Law and the submissions of law, and being otherwise fully advised in the premises, it is ORDERED AND ADJUDGED: The motion is denied.

Id. at 126.  Washington proceeded to trial, at which he testified, and the jury found him guilty of trafficking in oxycodone.

Through counsel, Washington appealed, filing an initial brief in which he asserted three main reasons why the trial court erred in denying his motion to suppress.  First, he contended that the stop occurred without probable cause.  Pet. Ex. C-1 at 10-14.  Second, he argued that the search violated the Fourth Amendment because it could not be justified by officer safety, a bulge in Washington's pants, or consent.  He asserted that law enforcement never asked Washington for consent to search his person, see id. at 14-21, and alternatively, to the extent Washington may have consented nonverbally, it was only pursuant to a show of authority.  Id. at 21-22.  Third, Washington argued that the search of the contents of the sock violated the plain feel doctrine because the officer continued to search even though he knew the knot in his waistband was neither a weapon nor contraband.  Also, assuming, arguendo, that Deputy Palecek felt the actual bulge inside his pants, Washington argued that the deputy did not immediately know it was contraband, and the illicit nature of the pills could not be determined until the contents of the sock were examined.  Id. at 22-34.  The First District Court of Appeal held oral argument, see Resp. Ex. R, before issuing a per curiam affirmance without written opinion.  Pet. Ex. C-2.

Respondents contend that Washington's claim is procedurally barred and not cognizable on federal habeas review, citing Stone v. Powell, 428 U.S. 465 (1976). Response at 12-16.[3]  In Stone, the Supreme Court considered "questions concerning the

---

[3] In the alternative, Respondents also assert that applying AEDPA deference, the claim must be denied.  Response at 11.

scope of federal habeas corpus" review as well as the role of the exclusionary rule, which

prohibits the use of illegally obtained evidence in a criminal trial, "upon collateral review

of cases involving Fourth Amendment claims." Stone, 428 U.S. at 474. Ultimately, the

Court held:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Id. at 482 (footnote omitted).[4]  But "[j]ust what kind of 'opportunity' [Stone] contemplates

has been the subject of debate." Good, 729 F.3d at 640.[5]  In the Eleventh Circuit,

> [a]n 'opportunity for full and fair litigation' means just that:  an opportunity.  If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

Lawhorn v. Allen, 519 F.3d 1272, 1287 (11th Cir. 2008) (quoting Caver v. State of Ala.,

577 F.2d 1188, 1192 (5th Cir. 1978)).  In particular, "where there are facts in dispute, full

---

[4] "Two explanations supported the decision.  One, the key purpose of federal habeas corpus is to free innocent prisoners.  But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty.  Stone, 428 U.S. at 490. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution.  Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great.  Id. at 493." Good v. Berghuis, 729 F.3d 636, 637 (6th Cir. 2013) (internal citations omitted and altered).

[5] "Most [ ] federal appellate courts have focused on whether the state courts offered the prisoner a procedure for presenting the Fourth Amendment claim." Good, 729 F.3d at 640 (citations omitted).  However, "[s]ome courts have focused on the adequacy of the procedure, sometimes even the application of the procedure, used by the court to resolve the claim." Id. at 639 (citing, inter alia, Tukes v. Dugger, 911 F.2d 508, 514 (11th Cir. 1990)).

and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." Tukes v. Dugger, 911 F.2d 508, 514 (11th Cir. 1990) (quotation omitted). In the alternative, "where [ ] the facts are undisputed, and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims." Id. (quotation omitted); see also Mason v. Allen, 605 F.3d 1114, 1120 (11th Cir. 2010) (applying the Stone bar even though the state trial court did not engage in fact-finding because petitioner conceded that all facts relevant to the claim were undisputed); Bradley v. Nagle, 212 F.3d 559, 565 (11th Cir. 2000) ("[F]ull and fair consideration in the context of the Fourth Amendment includes at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute." (quotations omitted)). Notably, the Stone bar "still applies despite a state court error in deciding the merits of a defendant's [F]ourth [A]mendment claim." Williams v. Brown, 609 F.2d 216, 220 (5th Cir. 1980) (citing Swicegood v. State of Ala., 577 F.2d 1322, 1324–25 (5th Cir. 1978)).[6]

---

[6] "[T]he Court in Stone rejected the notion that federal judges are institutionally more receptive to federal constitutional norms that are their state brethren. 428 U.S. at 493-94 n. 35. Underlying Stone is the conviction that state courts are as competent as the federal courts in insuring that federal constitutional rights are protected. O'Berry v. Wainwright, 546 F.2d 1204, 1215 (5th Cir. 1977). That premise is obviously destroyed if a federal court reaches the merits in a [F]ourth [A]mendment habeas case simply because it believes the state courts decided the issue incorrectly." Swicegood, 577 F.2d at 1324-25 (internal citations omitted and altered).

Here, Washington asserts that the state trial court "entered an order without written opinion, [citation omitted] and during the actual hearing, the trial court neither enunciated an oral opinion or [made] essential findings of fact, nor did the trial court base the denial on the application of any case law authority." Pet. Mem. at 10. He also notes that "the appellate court issued a per curiam affirmed decision without written opinion" and refused to issue a written opinion after he requested one. Id. He cites Tukes and Hearn v. Florida, 326 F. App'x 519, 522 (11th Cir. 2009) and essentially contends that the Stone bar should not apply because the state court failed to make explicit factual findings, which denied him a full and fair opportunity to litigate his Fourth Amendment claim.

Unlike Tukes and Hearn, however, there were no facts in dispute at Washington's evidentiary hearing. The entire search was recorded on video, and both the video itself and the transcript thereof were admitted into evidence by the trial court and included in the record on appeal. There was no need for the trial court to make explicit findings of fact for the First DCA to review because the relevant events were indisputably captured on video. To the extent the disputed issues involved mixed questions of law and fact (such as whether Washington consented to the search, whether Palecek had reasonable suspicion that Washington was armed and dangerous to justify a Terry frisk, whether any nonverbal consent was given and, if so, whether it was merely acquiescence to a show of authority, and whether the search violated the "plain feel" doctrine), the First DCA conducted an independent, de novo review, see Connor v. State, 803 So.2d 598, 608 (Fla. 2001), and could rely on the videotape for the facts. See McCloud v. State, 208 So. 3d 668, 676 (Fla. 2016) ("Inasmuch as a ruling is based on an audio recording [or videotape], the trial court is in no better position to evaluate such evidence than the

appellate court, which may review the tape for facts legally sufficient to support the trial court's ruling.") (quotations and citations omitted). As such, the absence of explicit factual findings by the trial court did not hinder the First DCA's de novo review of mixed questions of law and fact based on events indisputably captured on videotape.

In addition, Washington presented no witnesses to contradict Palecek's testimony, particularly with respect to Palecek's observations of the vehicle speeding and following too closely prior to the traffic stop, which were not captured on video.[7] Although he cross-examined Palecek in an attempt to impeach his credibility, he failed to expose any internal inconsistencies in Palecek's testimony related to his observations. Absent any contradictory evidence, there was no disputed issue of fact which necessitated a factual finding, or even a credibility finding.[8] In a suppression hearing, a Florida court "must accept evidence which . . . is neither impeached, discredited, controverted, contradictory within itself, or physically impossible." State v. Fernandez, 526 So. 2d 192, 193 (Fla. 3rd DCA 1988); see also State v. Ojeda, 147 So. 3d 53, 60 (Fla. 3rd DCA 2014); Roddy v. State, 658 So. 2d 144, 145 (Fla. 3rd DCA 1995); State v. Bowden, 538 So. 2d 83, 85 (Fla. 2d DCA 1989); but see State v. Moore, 791 So. 2d 1246 (Fla. 1st DCA 2001) (reversing order granting motion to suppress where trial court failed to make credibility findings regarding the unrebutted testimony of the two officers who were the only witnesses at the

---

[7] Palecek testified that he paced the vehicle for approximately one-half of a mile and confirmed by radar that the vehicle was traveling 85 miles per hour where the posted, lawful speed limit was 70 miles per hour. Pet. Ex. A-5 at 7-8. He also testified that his radar equipment was maintained according to the inspection standards and the speedometer calibrations were available to the state court. Id. at 27. Additionally, Palecek testified that he stopped the vehicle for following too closely. Id. at 7.

[8] In contrast, Hearn introduced evidence that directly contradicted the state witness's testimony and thereby created a factual dispute. See Hearn, 326 F. App'x at 520-22.

suppression hearing where the credibility determination was crucial to determining whether the trial court erred as a matter of law); State v. Shaw, 784 So. 2d 529 (Fla. 1st DCA 2001). The trial court is not free to find uncontroverted and essentially unimpeached testimony "not credible." Fernandez, 526 So. 2d at 193. Because Washington failed to present competing evidence, there was nothing to justify a factual finding contrary to Palecek's testimony. See id. Again, the lack of explicit factual findings by the trial court did not hinder the First DCA's de novo review of mixed questions of law and fact because the courts were required to accept Palecek's testimony. Because all of the facts relevant to this claim were undisputed, the First DCA was able to fully consider his claim.

Also, the First DCA diligently conducted an oral argument in Washington's case. Resp. Ex. R; see also Response at 12-13. Indeed, the oral argument in the First DCA suggests that the appellate court gave full consideration to Washington's Fourth Amendment claims even though it did not issue a written opinion. Because Washington had the opportunity to fully and fairly litigate his claim, the Stone doctrine applies to bar this Court's consideration.[9] The claim in ground one is due to be denied.

---

[9] Alternatively, Respondents criticize Washington's reliance on the pre-Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) authority of Tukes, and rely on Harrington v. Richter, 562 U.S. 86 (2011) to contend that "a state court's failure to make explicit findings or reliance on summary dispositions is irrelevant in federal habeas post-AEDPA." Response at 13-16. Respondents also urge this Court to assume reasonable factual determinations in support of the state courts' adjudications and accord implied factual findings the same deference as explicit findings. See Response at 16 (citing Blankenship v. Hall, 542 F.3d 1253, 1272 (11th Cir. 2008)). Indeed, in the context of AEDPA deference, the Supreme Court and the Eleventh Circuit have recently reminded federal courts of the important interests of comity and federalism and cautioned federal courts against imposing opinion-writing standards on state courts. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1238-39 (11th Cir. 2016) (en banc), cert. granted, Wilson v. Sellers, 137 S. Ct. 1203 (2017). But the effect, if any, of Richter on Tukes and Hearn appears to be an issue of first impression in this Circuit. Regardless, because the Court finds Washington's case to be factually distinguishable from Tukes and Hearn, the

## B. **Ground Two**

As ground two, Washington asserts that his conviction for trafficking was not supported by the evidence because the state tested only fifteen pills, which did not equal a trafficking weight under the law. Am. Petition at 7; Pet. Memo. at 44-46; Reply at 3-4. Respondents contend that Washington failed to fairly present the federal nature of this claim in the state court, and as such, the claim is unexhausted and procedurally defaulted. Response at 29-32. Respondents also assert that the claim is meritless. Id. at 29, 32-34. In his Reply, Washington asserts that his claim is exhausted because "the insufficient evidence goes to the core of a fair trial and due process as guaranteed by the sixth and fourteenth amendments." Reply at 3. He further contends that he "has no remedy available to him to have Greenwade v. State, 124 So. 3d 215 (Fla. 2013), applied to [his] case, other than by habeas review." Id. He also faults Respondents for failing to suggest what other avenues are available in state court to have Greenwade's applicability determined. Id.

On direct appeal, Washington raised this claim as issue two. Pet. Ex. C-1 at 34-37. He asserted that the trial court erred in denying his written motion for judgment of acquittal based on insufficient evidence of the weight required for a trafficking conviction. Id. He cited no federal constitutional provisions and no federal cases. He relied exclusively on state law cases. Id. He even concluded his argument by contending that "[b]ased on the wealth of established case law from Florida Courts, the trial court clearly erred . . . ." Id. at 37.

---

Court need not address the effect of Richter on the Tukes/Hearn requirement of explicit factual findings.

Because Washington failed to label his claim "federal," or otherwise indicate any federal source of law on which he relied, he failed to fairly present this claim to the state courts as a federal, constitutional claim rather than as a matter of state law. See Baldwin, 541 U.S. at 32; Duncan, 513 U.S. at 365-66; Preston, 785 F.3d at 456-59; Lucas, 682 F.3d at 1352. Raising a state law claim of insufficiency of the evidence that is merely similar to a federal, constitutional due process claim does not satisfy the "fairly presented" requirement. Duncan, 513 U.S. at 366; see also McNair, 416 F.3d at 1302. Washington failed to put the state court on notice that he intended to raise a federal claim. See French, 790 F.3d at 1270-71; Preston, 785 F.3d at 457. As such, his claim is unexhausted and procedurally defaulted. Because Washington offers no cause for and prejudice resulting from the procedural default, his claim is due to be denied.

## C. Ground Three

As ground three, Washington asserts that the prosecutor's comments during closing argument violated his Sixth Amendment right to a fair trial. Am. Petition at 8; Pet. Mem. at 47-49; Reply at 4-5. Respondents contend that Washington failed to fairly present the federal nature of this claim in the state court, and as such, his claim is unexhausted and procedurally defaulted. Response at 38-39. They also assert that his claim is not cognizable and otherwise without merit. Id. at 38-43.

On direct appeal, Washington raised this claim in issue three as sub-issue C. Pet. Ex. C-1 at 37, 41-44. He asserted that the prosecutor improperly criticized his theory of defense (Ex. C-1 at 42), insinuated that Washington lied during his testimony, and told the jury that his theory was "absurd and not worthy of your consideration" (Ex. C-1 at 43). He also contended that the prosecutor mischaracterized him by stating that he was

"doctor shopping" and suggesting he was in the process of committing an uncharged crime. Ex. C-1 at 43-44. Washington suggests that fundamental error occurred and that the cumulative effect of the prosecutor's comments rendered his trial unfair. Pet. Ex. C-1 at 41. However, he cited no federal constitutional provisions and no federal cases. He relied exclusively on state law cases. Id.

As in the claim in ground two, because Washington failed to label his claim "federal," or otherwise indicate any federal source of law on which he relied, he again failed to fairly present his claim to the state courts as a federal, constitutional claim rather than as a matter of state law. See Baldwin, 541 U.S. at 32; Duncan, 513 U.S. at 365-66; Preston, 785 F.3d at 456-59; Lucas, 682 F.3d at 1352. Washington failed to put the state court on notice that he intended to raise a federal claim. See French, 790 F.3d at 1270-71; Preston, 785 F.3d at 457. As such, his claim is unexhausted and procedurally defaulted. Because Washington offers no cause for and prejudice resulting from the procedural default, his claim is due to be denied.

### D. Ground Four

As ground four, Washington asserts that the trial court violated his Sixth Amendment right to be present at every critical stage of a criminal proceeding and to a fair trial. Am. Petition at 10; Pet. Memo at 49-50; Reply at 5-6. He also cites the Confrontation Clause.[10] Am. Petition at 10. He contends that he was not present when the trial judge obtained the jury verdict from the jury and that the verdict form was never passed from the jury foreman to the bailiff in the presence of Washington. Am. Petition

---

[10] Washington also cites the Third Amendment, which the Court presumes is a mistake. Am. Petition at 10.

at 10; Pet. Memo. at 50.  He asserts that at least one conversation occurred between juror(s) and courtroom personnel outside the presence of the jury when the verdict form was transferred and that such conversation(s) may have influenced the verdict.  Am. Petition at 10.  Washington further contends that he did not receive a fair trial before the trial judge.  Pet. Memo. at 50; Reply at 5-6.

Respondents contend that Washington failed to fairly present the federal nature of this claim in the state court, and as such, his claim is unexhausted and procedurally defaulted.  Response at 43.  They also assert that his claim is not cognizable and otherwise without merit.  Id. at 43-46.

On direct appeal, Washington raised this claim in issue three as sub-issue D.  Pet. Ex. C-1 at 37, 44-46.  He asserted that the trial court erred in denying his motion to arrest judgment under Florida Rule of Criminal Procedure 3.610.  Pet. Ex. C-1 at 44-46.  He implied that the verdict was so uncertain that it did not appear that the jurors intended to convict him of the offense.  Id. at 44.  He contended that irregularities in the acceptance and rendering of the verdict created uncertainty in the integrity of the verdict.  Id. at 44, 46.  He further argued that the state trial judge violated Florida Rule of Criminal Procedure 3.440(a) by reading the verdict himself rather than providing it to the clerk to read.  Id. at 44-45.  Washington quoted a Florida case for the proposition that "[a]mong a criminal defendant's most basic constitutional rights is the right rooted in the Confrontation Clause of the Sixth Amendment to be present at every critical stage of a criminal proceeding." Id. at 45 (quoting Blair v. State, 25 So. 3d 46, 47 (Fla. 5th DCA 2009)).  He also asserted that the acceptance and rendition of the verdict is a critical stage and that Washington had the right to be present during every aspect of the rendering of the verdict, citing

Florida cases. Id. He concluded his argument by contending that "[b]ased on the trial court's blatant disregard of the Florida Rules of Criminal Procedure, Mr. Washington's Due Process rights were severely violated, and the trial court erred in denying the Motion for Arrest of Judgment as well and the motion for New Trial." Id. at 46.

Although Washington referenced the Confrontation Clause of the Sixth Amendment and the right to due process, Washington failed to articulate and fairly present a federal, constitutional claim. Merely citing to the federal constitution is insufficient to exhaust a claim in state court. Anderson, 459 U.S. at 7; see also Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (declining to review state law claims that are merely "couched in terms of equal protection and due process"). And "[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." McNair, 416 F.3d at 1302 (quotations and citation omitted). Washington offers no cause for and prejudice resulting from the procedural default. But even if his oblique references to the federal constitution were sufficient to satisfy exhaustion, he still fails to present a federal, constitutional claim cognizable in federal habeas corpus. The essence of his claim is that the state court violated state rules of criminal procedure. It is purely an issue of state law. As such, Washington's claim is unexhausted, procedurally defaulted, and not cognizable in federal habeas, and his claim is due to be denied.

### E. Ground Five

As ground five, Washington asserts a violation of his Sixth Amendment right to a fair trial caused by the trial court's denial of special jury instructions on reasonable doubt and constructive possession, which permitted his conviction on evidence that did not

prove his guilt beyond a reasonable doubt.  Addendum to Am. Petition at 3; Pet. Memo. at 46; Reply at 4.  Washington contends that the trial court denied his counsel's request to instruct the jury that it "must" (rather than "should") find the defendant not guilty upon a finding of reasonable doubt.  Addendum to Am. Petition at 3.  Respondents contend that the claim is unexhausted, a pure issue of state law, and otherwise without merit. Response at 34-38.

On direct appeal, Washington raised this claim in issue three as sub-issue B.  Pet. Ex. C-1 at 37-41.  He asserted that the trial court erred by not giving special jury instructions on constructive possession and reasonable doubt.  Id.  He contended that the trial court abused its discretion, id. at 41, and negated his theory of defense, id. at 40. However, he cited no federal constitutional provisions and no federal cases.  He relied exclusively on state law cases.  Id.

Because Washington failed to label his claim "federal," or otherwise indicate any federal source of law on which he relied, he again failed to fairly present his claim to the state courts as a federal, constitutional claim rather than as a matter of state law.  See Baldwin, 541 U.S. at 32; Duncan, 513 U.S. at 365-66; Preston, 785 F.3d at 456-59; Lucas, 682 F.3d at 1352.  Washington failed to put the state court on notice that he intended to raise a federal claim.  See French, 790 F.3d at 1270-71; Preston, 785 F.3d at 457.  As such, his claim is unexhausted and procedurally defaulted.  Because Washington offers no cause for and prejudice resulting from the procedural default, his claim is due to be denied.

## VI. <u>Certificate of Appealability</u>
## <u>Pursuant to 28 U.S.C. § 2253(c)(1)</u>

If Washington seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Washington "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

ORDERED AND ADJUDGED:

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of the Court** shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Washington appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

DONE AND ORDERED at Jacksonville, Florida, this 22d day of January, 2018.

MARCIA MORALES HOWARD
United States District Judge

lc22
c: Counsel of Record